IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ARTHUR BENNETT, | : | |
| Appellant. | : | CIVIL ACTION NO. 22-989 |
| | : | BANKRUPTCY NO. 21-11677 |
| v. | : | |
| BON SECOURS MERCY HEALTH, INC., d/b/a DBA MERCY HEALTH, | : | |
| Appellee. | : | |

### MEMORANDUM OPINION

Smith, J.                                                                                                           July 20, 2022

Easily ascertainable claims, even when disputed, are generally unliquidated for the purpose of determining eligibility for chapter 13 bankruptcy. In the instant case, a chapter 13 debtor has appealed from the bankruptcy court's grant of the trustee's motion to dismiss the debtor's chapter 13 petition. The bankruptcy court, agreeing with the trustee, found the debtor's debts to exceed the ceiling set by 11 U.S.C. § 109(e), because a creditor's unsecured claim of $4,917,500, stemming from a state court action to recover money paid to one of the debtor's business interests, for personal protective equipment that was either never delivered, or delivered in a nonconforming condition, qualified as noncontingent and liquidated. The debtor now argues that this court should vacate the bankruptcy court's dismissal order because (1) the non-contract nature of some of the counts in the creditor's state court complaint renders the claim unliquidated, and (2) the bankruptcy court should have held an evidentiary hearing.

As discussed in more detail below, there is hardly a sum more easily computable than that of a business attempting to recoup a specified amount paid for conforming product never received, which can be broken down to price per unit. Thus, the mere fact that some of the creditor's state

court claims sound in tort or unjust enrichment does not obscure the value of the claim–the amount paid for a product never received. Moreover, the bankruptcy court did not abuse its discretion by granting the motion to dismiss without holding an unrequested evidentiary hearing. For the reasons discussed below, the court will affirm the decision of the bankruptcy court.

### I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On June 12, 2021, the appellant, John Arthur Bennett ("Bennett"), filed a chapter 13 petition for bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania. *Mem. Op.* at 3, *In re: Bennett,* Bankr. No. 21-11677 (Bankr. E.D. Pa.) ("Mem. Op."). The deadline to file claims against Bennett was August 23, 2021. *See id*. at 2. Two proofs of claim were filed: The appellee, Bon Secours Mercy Health, Inc. ("Mercy"), filed a $4,917,500 unsecured claim based on breach of contract, fraud, and unjust enrichment; and Tray, Inc., filed a $7,356,5000 unsecured claim based on fraud and misrepresentation in the sale of personal protection equipment. *See id*. Tray, Inc., withdrew its claim on January 24, 2022. *See id*.

As for Mercy's claim, the bankruptcy court summarized it as follows:

> Mercy filed [a complaint] against the Debtor and Devon MD, LLC ("Devon MD") in the Court of Common Pleas for Hamilton County, Ohio . . . . The Complaint alleges the Debtor is "a founder, member, owner, or agent of Devon MD – either individually or by way of other legal entities such as Devon International Group for which he is Chairman and CEO."[1] The Complaint asserts Devon MD, acting through the Debtor, failed to provide personal protective equipment to Mercy that conformed with what Mercy ordered and for which Mercy paid.[2] Specifically, Mercy alleges that Devon (a) delivered approximately 355,133 nonconforming equipment items, at a value of approximately $1,104,464, (b) delivered approximately 473,240 equipment items suspected to be nonconforming, subject to sample testing, at a value of $1,471,776, and (c) failed to deliver approximately 752,817 equipment items, at a value of approximately $2,341,260.[3] The Complaint

---

[1] Complaint, at ¶3. In an addendum to his bankruptcy petition, the Debtor identified Devon MD as a business name he had used.
[2] According to the Complaint, Mercy required that the isolation gowns meet certain specifications and be fully approved for their intended use of protecting against exposure to and the spread of COVID-19 in its medical facilities, of which the Debtor and Devon MD were aware. Complaint at ¶22.
[3] Complaint at ¶¶45 to 47.

2

includes a count asserting breach of contract against Devon MD, and counts asserting unjust enrichment and fraud against Devon MD and the Debtor.

*Id*. at 3–4 (footnotes in original).

On November 29, 2021, the trustee filed a motion to dismiss the chapter 13 petition. *See id*. at 4. Mercy filed a response in support of the trustee's motion to dismiss on December 14, 2021. *See id*. The bankruptcy court ultimately granted the trustee's motion to dismiss based on Mercy's argument that its claim was noncontingent and liquidated, therefore rendering Bennett ineligible for chapter 13 bankruptcy under 11 U.S.C. § 109(e). *See id*. at 10.

Bennett then initiated the present appeal on March 14, 2022. *See* Doc. No. 1. This court entered a briefing schedule on April 11, 2022. *See* Doc. No. 6. Bennett filed his brief on May 11, 2022. *See* Doc. No. 7. Mercy filed its brief on June 9, 2022. *See* Doc. No. 8. The trustee filed its reply to Bennett's brief on June 10, 2022. *See* Doc. No. 9. The court held oral argument on July 8, 2022. *See* Doc. No. 11. The appeal is now ripe for adjudication.

## II.     STANDARD OF REVIEW

The district court reviews the bankruptcy court's factual findings for clear error and the bankruptcy court's conclusions of law *de novo. See In re Brightful*, 267 F.3d 324, 327 (3d Cir. 2001) ("We must accept the Bankruptcy Court's findings of fact unless they are clearly erroneous, but we exercise plenary review over legal issues."). A bankruptcy court's application of the facts to the law, *i.e.*, a bankruptcy court's legal conclusion, is reviewed *de novo. See In re Zierden–Landmesser*, 249 B.R. 65, 69 (M.D. Pa. 2000) ("Whether discharging a debtor's student loans would impose an 'undue hardship' under 11 U.S.C. § 523(a)(8) requires a legal conclusion, which is to be reviewed *de novo*."). A bankruptcy court's exercise of discretion is reviewed for abuse thereof. *See In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005).

3

## III.     DISCUSSION

The parties dispute, *inter alia*, whether Mercy's claim is liquidated or nonliquidated for the purpose of determining whether Bennett is eligible for chapter 13 bankruptcy. Bennett argues the bankruptcy court erred (1) in finding he was ineligible to proceed under chapter 13 because his debts exceeded the amounts set forth by 11 U.S.C. § 109(e), and (2) by failing to hold an evidentiary hearing on whether Mercy's claim was liquidated or unliquidated. *See* Appellant's Br. at 9, Doc. No. 7. The court addresses each argument in turn.

### A.     Bennett's Eligibility for Chapter 13 Bankruptcy

As explained by the bankruptcy court,

> [s]ection 109(e) of the Bankruptcy Code provides, in relevant part, that "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $419,275 and noncontingent, liquidated, secured debts of less than $1,257,850 … may be a debtor under chapter 13 of this title."

Mem. Op. at 6 (citing 11 U.S.C. § 109(e)). Therefore, if Mercy's claim is determined to be noncontingent and liquidated, Bennett is ineligible to proceed in bankruptcy under chapter 13.

"Contingent or unliquidated unsecured debts are not included as unsecured debt for the purpose of the Section 109(e) eligibility determination, but noncontingent, liquidated debts that are disputed are included in this determination." *In re Saunders*, 440 B.R. 336, 341 (Bankr. E.D. Pa. 2006). In defining the terms contingent and liquidated,

> [a] debt is contingent where the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor. A noncontingent debt is one where all events giving rise to the liability for the debt occurred prior to the debtor's filing for bankruptcy. A debt is liquidated if the value of the claim is easily ascertainable.

*In re Heaton*, Bankr. Nos. CIV. A. 00-3433, 98-21887, 2001 WL 1175099, at *1 (E.D. Pa. Sept. 28, 2001) (internal citations and quotation marks omitted), *aff'd*, 43 F. App'x 506 (3d Cir. 2002).

Here, the court agrees with the bankruptcy court that Mercy's claim is noncontingent because "all factual predicates that would underpin [Bennett's] liability, if he is ultimately determined to be liable, occurred prior to [Bennett's] bankruptcy filing." Mem. Op. at 9. Turning first to liquidation, the bankruptcy petition's filing date is the operative date for determining whether a debt is liquidated or unliquidated. *See In re Corson*, Bankr. No. 03-18160F, 2004 WL 5865045, at *3 (Bankr. E.D. Pa. June 25, 2004) ("[T]he eligibility language used in section 109(e) refers only to unsecured claims which are liquidated and noncontingent on the date of the filing of the petition. Thus, the operative date is the amount owed to unsecured creditors as of the date of the commencement of the case." (citation and internal quotation marks omitted)). "A claim is 'liquidated if the amount due can be determined with sufficient precision.' A debt is liquidated 'if its amount is readily and precisely determinable, as where the claim is determinable by reference to an agreement or by simple computation.'" *Id.* at *5 (citations omitted).

Generally, "most contract claims against the debtor will be viewed as liquidated and noncontingent, even if there is a dispute as to the debtor's breach or the amount of damages." *Id*. Moreover, "[t]he possibility that a judgment or obligation may be cancelled upon future legal determinations does not alter the noncontingent or liquidated nature of the obligation. Debts of a contractual nature, even though disputed, are liquidated." *In re Heaton*, 2001 WL 1175099, at *2 (citations and internal quotation marks omitted).

In arguing that tort claims, like the fraud count contained within Mercy's claim, are generally unliquidated, Bennett partially relies on *In re Corson*.[4] *See* Appellant's Br. at p. 11; *In re Corson*, 2004 WL 5865045, at *5 ("[O]ne may fairly generalize that contract claims are liquidated claims, since the amount of the claim is readily determined from the agreement itself,

---

[4] The court notes that while Bennett only referenced *In re Corson* once in his appellant brief, he relied on it to a substantial degree during oral argument before the court on July 8, 2022. *See* Appellant's Br. at p. 11.

5

while tort claims, which may require a court to fix damages, including pain and suffering, are not liquidated."). However, that decision also cautioned that the type of claim is not wholly determinative of whether a debt is liquidated or unliquidated. *See id*. at *17 n.10 (explaining that "while many prepetition tort claims will be unliquidated, since the fixing of the precise amount due is not readily determinable by a bankruptcy court, there will be situations when that generalization will not apply"). Rather, the central issue is whether a disputed debt is capable of ready determination, irrespective of the type of claim. *See id*. ("Thus, where tort claims are concerned in applying section 109(e), the issue becomes whether the claims are capable of simple calculation, without the use of opinion testimony or discretion." (citation omitted)).

As thoroughly explained by the bankruptcy court, Mercy's claim seeks to recoup $4,917,500 for isolation gowns either never received or received in a nonconforming condition, at an original unit price of $2.81 per gown, and shortly thereafter an amended unit price of $3.11 per gown. *See* Mem. Op. at 10. The value of the claim can be computed as either the total value Mercy paid for the gowns, or by multiplying the original unit price by the number of gowns at issue. Though some of Mercy's theories might sound in tort, the general amount in question is no secret– the amount needed to make Mercy whole for the nondelivered and nonconforming gowns. Thus, Mercy's claim is easily ascertainable and exceeds section 109(e)'s ceiling of $419,275. Therefore, the court will affirm the bankruptcy court's determination that Mercy's claim is liquidated. It follows that Bennett is ineligible to proceed in chapter 13 bankruptcy, because his noncontingent, liquidated debts exceed the ceiling imposed by section 109(e).

### B. The Bankruptcy Court's Decision Not to Hold a Hearing

The bankruptcy court did not abuse its discretion in electing against holding an evidentiary hearing on whether Mercy's claim was liquidated. As other courts have recognized, "[a bankruptcy

6

court] need not conduct an extensive inquiry to determine whether the debtor falls within the numerical parameters set by Section 109(e)." *In re Faulhaber*, 269 B.R. 348, 356 (Bankr. W.D. Mich. 2001). Here, it was well within the court's discretion to simply rely on Bennett's schedules and Mercy's proof of claim.[5]

### IV.   CONCLUSION

As discussed above, the bankruptcy court did not err in determining Mercy's claim is noncontingent and unliquidated. Mercy's claim, though disputed and partially sounding in tort, is easily ascertainable and computable. Additionally, the bankruptcy court did not abuse its discretion in granting the trustee's motion to dismiss without holding an evidentiary hearing on the matter. Accordingly, the court will affirm the decision of the bankruptcy court.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[5] The court recognizes Mercy and the trustee also argue that Bennett waived this argument by not requesting an evidentiary hearing. However, because the court fails to find an abuse of discretion regardless of this fact, it will not delve into those arguments.